IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TANYA MARIE BABB,

      Plaintiff,

                                       3:13-cv-00221-PK

                                       OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

PAPAK, Magistrate Judge:

      Plaintiff Tanya Babb ("Babb") seeks judicial review of the Commissioner of Social

Security's final decision denying her application for disability insurance benefits ("DIB") under

Title II of the Social Security Act (the "Act").  This Court has jurisdiction pursuant to 42 U.S.C.

§ 405(g) and 1383(c)(3), and the parties have consented to adjudication by a Magistrate Judge.  I

have considered the parties' briefs and all of the evidence in the administrative record.  For the reasons set forth below, the Commissioner's final decision is affirmed.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 404.1520(a)(4).  At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge ("ALJ") considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 404.1520(a)(4)(i).  If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. § 404.1520(a)(4)(ii).  An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 404.1520(c).  The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); *see also Bowen*, 482

2 – OPINION AND ORDER

U.S. at 141.   If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).  If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. § 404.1520(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related, physical and mental activities on a regular and continuing basis, despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 404.1545(a); *see also* Social Security Ruling ("SSR") No. 96-8p, 1996 SSR LEXIS 5.

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 404.1520(a)(4)(iv).  If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f).  In the event the claimant

3 – OPINION AND ORDER

is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof is, for the first time, on the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether the claimant can perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566.  If the Commissioner meets its burden to demonstrate that the claimant is capable of performing jobs existing in significant numbers in the national economy, the claimant is conclusively found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566.  A claimant will be found entitled to benefits if the Commissioner fails to meet its burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

## LEGAL STANDARD

A reviewing Court must affirm an Administrative Law Judge's decision if the ALJ applied the proper legal standards and his findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The Court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.*  The Court may not substitute its judgment for that of the Commissioner. *See id.*, *citing Robbins*, 466 F.3d at 882;

*see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

## BACKGROUND

Born in July, 1975, Babb was 34 years old on the alleged onset date. Tr. 195.[1] She protectively filed for DIB on October 1, 2009, alleging disability as of July 26, 2009 due to neurology problems, anxiety, and allergies. Tr. 109-11, 200. After her applications were denied initially and on reconsideration, Babb requested a hearing before an ALJ. Tr. 131-32. She appeared before ALJ Catherine Lazarun on July 15, 2011. Tr. 42-108.

At the hearing, Babb testified that she was unable to work because she is "continually sick" with nausea, vomiting, and diarrhea. Tr. 58. She has problems with her left hand and is learning to write with her right hand. Tr. 45, 58. Babb is married with children ages 18 and 12, has a drivers' license, and told the ALJ that she completed two years of college in 2001. Tr. 46-47, 205. Babb last worked at Macy's as a full time cosmetics counter manager, where she used a cash register, supervised one to three people, and lifted up to 30 pounds. Tr. 47, 199, 201. Babb has also worked at Nordstrom, Fred Meyer, Ross, and Pier One, and was a caregiver for her autistic niece for one year in 2009. Tr. 47-51, 55-56. She testified that she has severe intestinal problems, with chronic abdominal pain, extreme nausea, vertigo, vomiting, and diarrhea, which require her to be hospitalized "two to three times a month." Tr. 58, 60-61. She stated that she has anxiety attacks once or twice a week, which can last up to two hours. Babb also testified that, since the alleged onset date, she sleeps about two hours at a time, for about five hours a day.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 13.

Tr. 62. She takes Gabapentin, Zolfran, Estradiol, Diluadid, Prestiq, and Temazepam for her impairments. Tr. 58-59.

After the hearing, ALJ Lazarun issued a decision finding Babb not disabled. Tr. 21-36. The Appeals Council denied her subsequent request for review, making the ALJ's October 28, 2011 decision the final decision of the Commissioner. Tr. 1-6; *see* 20 C.F.R. § 422.210(a); *see also, e.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000). This action followed.

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the Administrative Law Judge found that Babb had not engaged in substantial gainful activity since the alleged onset date of July 26, 2009. Tr. 26. At the second step, the ALJ found that Babb had the following severe impairments: intussusception and symptoms of irritable bowel syndrome, history of anorexia and bulimia, obesity, and an adjustment disorder with anxiety. *Id.* Because the combination of impairments was deemed severe, the ALJ properly proceeded to the third step of the analysis.

At the third step, the ALJ found that none of Babb's impairments met or equaled any of the impairments enumerated in 20 C.F.R. § 404, subpt P, app. 1. Tr. 28. The ALJ therefore conducted an assessment of Babb's RFC. Specifically, the ALJ found that during the relevant adjudication period Babb could perform sedentary work with the following limitations: she has limited ability to push and operate foot controls with her left foot; she can occasionally reach, handle, finger, and feel with her ambidextrous left hand; she can occasionally climb, but cannot climb ladders, ropes, or scaffolds; she can perform simple, routine, and complex tasks; and she must avoid concentrated exposure to fumes, odors, dusts, gasses, poor ventilation, and hazards. Tr. 29-30. In reaching these conclusions, the ALJ considered all of the objective medical

evidence in the record, opinion evidence, and Babb's own statements regarding her symptoms and limitations to the extent found credible. Tr. 26-36.

At the fourth step of the five-step process, the ALJ found that Babb was unable to perform any of her past relevant work. Tr. 34. At step five, the ALJ determined that Babb could perform jobs that exist in significant numbers in the national economy, including information clerk and telemarketer. Tr. 34-35. Based on her step five findings, the ALJ concluded that Babb was not disabled. *Id.*

## ANALYSIS

Babb argues that the Commissioner erred because she (1) found her less than fully credible; (2) improperly omitted her left limb sensory slowing from the list of impairments at step two; (3) failed to develop the record with respect to a possible somatoform disorder; (4) incorrectly evaluated plaintiff's symptoms; and (5) formulated an RFC based on insufficient evidence. Because the Court finds that the ALJ's decision was legally sound and supported by substantial evidence, the Commissioner's decision is affirmed.

## I.    The ALJ's Credibility Finding

Babb first argues that the ALJ improperly rejected her credibility. Pl.'s Br. 26. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. When doing so, the claimant "need not show that her impairment could reasonably be expected to cause

the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96–7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider ... ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms ... other testimony by the claimant that appears less than candid [and]

8 – OPINION AND ORDER

unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. If the "ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ rejected Babb's credibility for several reasons. Tr. 30-31. First, the ALJ found that Babb was not forthcoming in her testimony about her college attendance. Tr. 31; *see Smolen*, 80 F.3d at 1284 (the ALJ may employ ordinary techniques of credibility evaluation when weighing a claimant's testimony). At the hearing, the ALJ thoroughly questioned Babb about her education and activities of daily living. *See* Tr. 65-67. Babb's testimony indicated that she had not received formal education within the last ten years. Tr. 68. At one point during the hearing, after going through a list of questions regarding her activities, the ALJ queried, "Are there any other activities that you've been doing that I haven't mentioned?" Babb replied, "Not that I can think of, no." *Id.*

In contrast with the picture of relative inactivity painted by Babb's testimony, Babb's husband testified that she has been pursuing a Bachelor of Arts degree in Sociology since the fall of 2010, taking a full courseload of "14 or 15" credits. Tr. 31, 90. When questioned about her income, Babb also failed to mention that she received financial aid. Tr. 31, 90. The ALJ reasonably inferred that Babb displayed a lack of candor at the hearing; this lack of candor was a legally sufficient reason for the ALJ to reject her testimony. *Smolen*, 80 F.3d at 1284.

Second, the ALJ found that Babb's fulltime college attendance conflicts with her self-reported limitations. In weighing a claimant's credibility, the ALJ may consider inconsistencies

9 – OPINION AND ORDER

between a claimant's testimony and her activities. *Thomas*, 278 F.3d at 959 (upholding ALJ's negative credibility finding where claimant "had not been a reliable historian"). Specifically, Babb's status as a fulltime student contradicts her subjective symptom testimony alleging frequent debilitating abdominal pain, dizziness, nausea, vomiting, diarrhea, panic attacks, and left hand problems. Babb's other activities, such as independent self-care, household chores such as dusting and laundry, yoga and pilates, international travel after the alleged disability onset date also contradict her subjective symptom testimony. Tr. 32, 65-66. In sum, Babb's activities of daily living are inconsistent with the nature and severity of her alleged symptoms. This constitutes a second specific, clear and convincing reason for rejecting Babb's testimony. *Smolen*, 80 F.3d at 1284; *Dodrill*, 12 F.3d at 918; *see also Thomas*, 278 F.3d at 959.

Third, the ALJ considered medical evidence that Babb exaggerated her symptoms to medical providers. The ALJ may consider the medical evidence in evaluating a claimant's credibility. *Smolen*, 80 F.3d at 1284. The ALJ noted that Karen Dellinger, M.D., examined Babb in 2009 and opined on two occasions that she suspected Babb embellished her symptoms. Tr. 32. Babb does not challenge Dr. Dellinger's findings. Dr. Dellinger's opinion provides a third clear and convincing reason to reject Babb's credibility. *Smolen*, 80 F.3d at 1284.

In sum, the ALJ provided specific, clear and convincing reasons supported by substantial evidence in the record for rejecting Babb's testimony. Although Babb challenges additional reasons the ALJ provided for her credibility finding, this Court will not disturb the ALJ's finding where, as here, it is supported by substantial evidence in the record. *Thomas*, 278 F.3d at 959, *citing Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999).

## II.    Left Limb Sensory Slowing

Babb also argues that the ALJ erred because she failed at step two to consider her left limb sensory slowing as a medically determinable impairment. At step two, the ALJ determines whether the claimant's impairments are "severe" under the Commissioner's regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii); 404.1520(a)(4)(ii). When the Commissioner resolves step two in the claimant's favor, the claimant has the burden to show that any impairment omitted at step two results in greater limitations than the ALJ included in the RFC assessment. *Burch v. Barnhart*, 400 F.3d 676, 682-83 (9th Cir. 2005) (finding no error in the ALJ's omission of claimant's obesity at step two because the record did not indicate that claimant's obesity exacerbated her other impairments).

The ALJ resolved step two in plaintiff's favor. Tr. 26. The ALJ then proceeded with the sequential analysis and considered medical evidence from George Veech, M.D. that Babb had mildly decreased sensation on her left side. Tr. 28. She also considered Dr. Dellinger's opinion that Babb's responses to medical testing suggested "slowing on the left somewhere between the foot and the cortex." Tr. 28, 647. The ALJ accordingly assessed Babb's limitations as including limited ability to stand and walk, and a limited ability to push and operate foot controls with her left foot. Tr. 29-30, 32. On this record, Babb has the burden to show that her left limb sensory slowing resulted in greater limitations than the ALJ included in the RFC. *Burch*, 400 F.3d at 682-83.

Babb argues that reviewing physician Guthrie Turner, M.D., failed to consider Dr. Dellinger's opinion, and that the ALJ thus erred by relying upon Dr. Turner's opinions when formulating the RFC. Pl.'s Br. 26-27, *citing* Tr. 33. However, the ALJ clearly took Dr. Dellinger's findings into account when making her ultimate determination. *See* Tr. 28, 32. As noted, the ALJ incorporated limitations related to Babb's left leg problems into the RFC. Tr. 29-

11 – OPINION AND ORDER

30, 32. Accordingly, the Court finds no reversible error in the ALJ's omission of Babb's left limb sensory slowing at step two. *See Burch*, 400 F.3d at 682-83. To the extent that Babb offers an alternative interpretation of Dr. Dellinger's findings, the ALJ's reasonable interpretation must be upheld. *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the Court] may not substitute [its] judgment for the ALJ's"); *see also Burch*, 400 F.3d at 680-81 (the Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

## III.    Failure to Develop the Record

Babb next argues that the ALJ failed to develop the record with respect to her possible somatoform disorder. Pl.'s Br. 28. The Commissioner has a duty to assist the claimant in developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir.2001). As SSR 96-7p, n. 3 provides,

> [the ALJ] must develop evidence regarding the possibility of a medically determinable mental impairment when the record contains information to suggest that such an impairment exists, and the individual alleges pain or other symptoms, but the medical signs and laboratory findings do not substantiate any physical impairment(s) capable of producing the pain or other symptoms.

Here, the ALJ expressed concern over Babb's numerous emergency department visits, lack of physical findings to substantiate her symptoms and possible embellishment of her symptoms. Tr. 31, 32. To investigate the possibility that Babb suffered from mental impairments, DDS ordered a consultative psychological examination from Amanda Ragonesi, Psy. D. Tr. 443-46. Dr. Ragonesi diagnosed Axis I adjustment disorder with mixed anxiety and depressed mood. Tr. 446.

Babb argues that Dr. Ragonesi's report did not create a sufficient record of Babb's mental health impairments because the examination was conducted 2010, "prior to [Babb's] emergent

12 – OPINION AND ORDER

gastrointestinal disorder and surgery." Pl.'s Br. 28. In support of her argument that the ALJ was required to develop the record further, Babb notes evidence that her pain was untreatable; numerous emergency room visits related to her GI disorder; and medical evidence that she was exaggerating her symptoms.[2] Babb cites *Rask v. Astrue*, an unpublished decision from this District, for the proposition that the ALJ had "a heightened duty to develop the record" regarding possible somatoform disorder under these circumstances. *Rask v. Astrue*, 2011 WL 5546935 at *15 (D. Or. 2011). In *Rask*, the ALJ considered evidence from three examining doctors that the claimant's symptoms might be the product of somatoform disorder, but nevertheless failed to subpoena the doctors or submit additional questions to them concerning the possibility that the claimant suffered from somatoform disorder. *Id.* at *14. By contrast, none of Babb's medical providers explicitly suggest a possible somatoform disorder.[3] This is true of the physicians who examined Babb after her "emergent gastrointestinal disorder and surgery." *See* Tr. 949 (letter dated April 3, 2012 from Paul Anderson, M.D., stating that Babb "has been under the care of the Digestive Health Center at OHSU since 8/2010" but with no mention of a possible somatoform disorder).

On this record, the Court must uphold the ALJ's discretionary decision not to request a second consultative examination. *See* 20 C.F.R. § 404.1519(a) ("[t]he decision to purchase a consultative examination will be made on an individual case basis"). As Babb notes, *Rask* does

---

[2] Babb argues that her emergency room visits could "reasonably support an undiagnosed but well-documented symptoms [sic] of somatoform disorder." *Id.* at 29, *citing* SSR 96-7p (the ALJ must develop evidence regarding the possibility of a medically determinable impairment where the record contains information to suggest such impairment exists).

[3] Babb also argues that the treatment note from Dr. Paul Anderson indicating that there are no further treatment options for Babb's digestive health is evidence that her symptoms are "unexplained medically." Pl.'s Br. 29. The Court rejects this argument. Specifically, the Court rejects the notion that there are medically explicable conditions for which there are no viable treatment options.

not hold that an ALJ is required to "rule out" the possibility of somatoform disorders. Pl.'s R.

Br. 4. None of the medical professionals who examined Babb suggested that she be evaluated

for somatoform disorder. The ALJ reasonably interpreted the evidence of Babb's abdominal

pain, frequent trips to the emergency room, and exaggerated symptoms as evidence of her poor

credibility. Because the ALJ's interpretation of the evidence is rational, it is immaterial that the

evidence may be "susceptible [of] more than one rational interpretation." *Magallanes*, 881 F.2d

at 750. The ALJ's decision not to order further psychological evaluation was not error.

## IV.    Evaluation of Symptoms

Babb also challenges the ALJ's evaluation of her symptoms when formulating the RFC.

Specifically, she argues that the ALJ erred by failing to recognize her "gastrointestinal

symptoms, left limb impairments[,] and possible somatoform disorder." Pl.'s Br. 30. The ALJ is

not required to incorporate properly rejected limitations into the RFC. *See Stubbs-Danielson v.*

*Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (upholding ALJ's decision where the RFC

omitted alleged limitations that the ALJ properly rejected).

As discussed above, the ALJ did not err in failing to include Babb's left limb sensory

slowing as a medical impairment at step two, and properly incorporated Babb's left limb

restrictions into the RFC. Further, the ALJ was not required to incorporate somatoform-related

limitations into the RFC. Because the ALJ properly found Babb not credible and incorporated

all properly credited limitations in the RFC, her RFC assessment was free of legal error. *Stubbs-*

*Danielson*, 539 F.3d at 1175-76. The ALJ's RFC assessment is therefore affirmed.

## V.    Insufficient Evidence

Babb argues, finally, that the ALJ did not have enough evidence to formulate the RFC

because nonexamining medical consultants Dr. Turner and Anita Peterson, Ph.D., assessed

Babb's limitations in 2009, before her ileum intussusception, chronic abdominal pain, and gastroparesis. *See* Tr. 448, 450, 727. She argues that the ALJ therefore did not properly account for Babb's gastrointestinal ("GI") problems such as frequent trips to the emergency room for abdominal pain; vomiting, nausea, dehydration, and diarrhea, when formulating her RFC. Pl.'s Br. 34. For the reasons discussed below, the Court rejects this argument.

First, the record shows that Babb's abdominal pain and nausea were controlled with her prescribed medications. *See* Tr. 541 (treatment note indicating pain symptoms were relieved by Oxycodone), 773 (treatment note indicating symptoms "improved following pain and nausea medication"). Second, abdominal pain following Babb's intussusception was consistent with her history of abdominal pain, first reported in 2007. In a May, 2010 treatment note, for example, Erin Schneider, M.D., stated that Babb had a "long history of abdominal pain," and that her ongoing abdominal pain was similar to symptoms reported "3 years ago," prior to the alleged onset date. Tr. 769.

Third, as discussed above, the ALJ found Babb not credible regarding the extent of her GI-related limitations and symptoms. Tr. 31, 45-47, 703-800. Babb's own testimony is the only evidence of record that contradicts the medical opinions of Drs. Turner and Peterson. Because the ALJ's credibility finding was supported by substantial evidence, and the ALJ is not required to incorporate properly rejected limitations into the RFC, the ALJ did not err in omitting some of Babb's alleged GI-related symptoms and limitations from her RFC. *Stubbs-Danielson*, 539 F.3d at 1175-76.

Fourth, the opinions of Drs. Turner and Peterson were consistent with testimony of Babb's husband regarding her activities of daily living. A non-examining medical consultant's opinion constitutes substantial evidence when consistent with other independent evidence in the

15 – OPINION AND ORDER

record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The consultative examiners' medical opinions thus constituted substantial evidence of Babb's pain-related limitations. *Id.* at 1149. In sum, there was sufficient evidence in the medical record for the ALJ evaluate Babb's mental and physical limitations and properly conduct the RFC assessment.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision in connection with Babb's application for disability insurance benefits is affirmed.


Dated this 7th day of April, 2014.

Honorable Paul Papak
United States Magistrate Judge

16 – OPINION AND ORDER